**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

MANDI T. GRIFFIN,

                                    Plaintiff,

      -v.-

                                                       5:14-CV-1030

EVELYN and STEVE PASQUAL,[1]                        (MAD/ATB)
Geraldine Pediatric Care,

                                    Defendants.

---

MANDI T. GRIFFIN, Plaintiff pro se

ANDREW T. BAXTER, United States Magistrate Judge

### ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the Court for review a complaint, together with an application to proceed in forma pauperis ("IFP") (Dkt. Nos. 1, 2), filed by plaintiff Mandi T. Griffin. (Dkt. Nos. 1, 2). Plaintiff brings this complaint on a form for civil rights complaints, brought pursuant to 42 U.S.C. § 1983. (Compl. at 1) (Dkt. No. 1).

Plaintiff appears to be complaining about the care received by her daughter, "V.G." at the defendants' facility in California. Plaintiff seeks an investigation and thirty million dollars in damages. (Compl. at CM/ECF p.10).

**I.    IFP Application**

A review of plaintiff's IFP application shows that plaintiff declares she is unable to pay the filing fee. (Dkt. No. 2). This court agrees, and finds that plaintiff is financially eligible for IFP status. In addition to determining whether plaintiff meets

---

[1] A search of public records relating to defendant Geraldine Pediatric Care shows that Evelyn Pascual is listed as the Administrator of the facility. http://www.npidashboard.com/npi/1922282862. The court will use the correct spelling of this defendant's name. There is no listing for "Steve" Pasqual or Pascual. However, the court notes that plaintiff never asserts any facts against "Steve" in her "Causes of Action." Thus, any issues with his identification or the spelling of his name are irrelevant.

the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i) -(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*,

550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

## II. Facts

In her extremely vague complaint,[2] plaintiff appears to allege that her daughter V.G. was discharged from the defendants' facility in California on an unknown date, based on the plaintiff's change of medical insurance carriers. (Comp. at CM/ECF p.7) (First Cause of Action) Plaintiff states that defendants threatened to call "Social Services" to terminate plaintiff's parental rights based on "abandonment," even though all the facility staff knew that plaintiff needed to obtain military housing and obtain the proper adaptive equipment, necessary for V.G.'s survival. *Id.*

Plaintiff's "Second Cause of Action" states that when defendants discharged V.G., defendant Evelyn Pascual informed plaintiff that V.G.'s medication had been "reduced," and that she no longer needed her seizure medication because she was no longer having seizures. (Compl. at CM/ECF p. 8). Plaintiff states that after her daughter's "untimely death," plaintiff found records, showing that V.G. had not been "winged off"[3] her medication. Instead, she had been "stripped" of her medication. (*Id.*) This allegedly showed deliberate indifference and "put V.G. at risk." (*Id.*)

Finally, plaintiff alleges that after she was "arraigned and indicted for the death

---

[2] Although this is a form-complaint, plaintiff has not completed the form-section entitled "Facts" or the section for "Causes of Action." (Compl. ¶¶ 6, 7). Instead, she has written "see attached" in both of those sections and has attached hand-written pages to the complaint. (Compl. at CM/ECF pp. 7-10). In her hand-written pages, she has not included a separate "Fact" section, rather, she has only listed three "Causes of Action."

[3] Because individuals are not "winged off" medication, the court has interpreted this phrase as "weaned off." The court assumes that plaintiff is trying to say that her daughter's medication was not stopped correctly.

3

of [her] daughter V.G.," plaintiff's trial attorney spoke to defendant Pascual and Crystal Dixon,[4] who had very "nice" things to say about plaintiff. (*Id.*) Plaintiff alleges that these two individuals told plaintiff's attorney that plaintiff had been "properly trained to care for V.G. However, plaintiff claims that she received no specialized training, nor had she received any certification related to caring for V.G.'s specific condition. (*Id.* at CM/ECF p.9). Plaintiff claims that she learned to care for V.G. by observing staff on plaintiff's "daily visits." Plaintiff alleges that at V.G.'s funeral, the staff was very generous to V.G.'s father and gave him a check for $500.00. (*Id.*)

In her "Relief" section, plaintiff states that the Geraldine Pediatric Care owners were "deliberately indifferent" toward V.G., and that any reasonable person would have told plaintiff that V.G.'s medication was reduced and that she had been "winged off." (*Id.*) Plaintiff claims that this was "another prelude to [V.G's] untimely death." (*Id.* at CM/ECF p.10). Plaintiff then makes some random statements about the "No Child Left Behind Clause" being extended to children with special needs. (*Id.*) Plaintiff states that the "solution" is not to solicit a parent to sign over his or her rights to the child, and that plaintiff feels as though she was "penalized for not signing her over." (*Id.*)

As stated above, plaintiff has filed this action on a form that is used for civil rights actions under 42 U.S.C. § 1983. As will be discussed below, section 1983 is not a proper basis for this court's jurisdiction based on the facts stated by plaintiff. Because plaintiff is pro se,[5] the court will also examine other bases for jurisdiction in

---

[4] Crystal Dixon is not a named defendant in this action.

[5] As required by the Second Circuit, this court has interpreted plaintiff's claims to make the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

4

this recommendation.

## III. Jurisdiction

### A. Legal Standards

Subject matter jurisdiction can never be waived or forfeited. *ACCD Global Agriculture, Inc. v. Perry*, No. 12 Civ. 6286, 2013 WL 840706, at *1 (S.D.N.Y. March 1, 2013) (quoting *Dumann Realty, LLC v. Faust,* No. 09 Civ. 7651, 2013 WL 30672, at *1 (S.D.N.Y. Jan. 3, 2013) (citing *Gonzalez v. Thaler*, __ U.S. __, 132 S. Ct. 641, 648 (2012); *Henderson ex rel. Henderson v. Shinseki*, __ U.S. __, 131 S. Ct. 1197, 1202 (2011)). Federal courts are mandated to sua sponte examine their own jurisdiction at every stage of the litigation. *Id.*

#### 1. Federal Question Jurisdiction

##### a. Section 1983

Federal question jurisdiction pursuant to 28 U.S.C. § 1331 provides a basis for jurisdiction when the plaintiff brings a civil action that arises "under the Constitution, laws, or treaties of the United States." 28 U.S. C. § 1331. Plaintiff has filed this case, using a form for civil rights actions under 42 U.S.C. § 1983. To state a claim under section 1983, the plaintiff must allege both that the defendant has violated plaintiff's rights under either the Constitution or laws of the United States, and that the defendant acted "under color of state law." *Rae v. City of Suffolk*, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010); 42 U.S.C. § 1983.

A person acts under color of state law when he or she acts in his or her official capacity, "clothed with the authority of state law," or acts under "pretense" of law by purporting to act with official power. *Pleasure Island, Inc. v. City of New York*, No. 12

5

Civ. 4699, 2013 WL 2311837, at *5-6 (E.D.N.Y. May 24, 2013) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)). The requirement that the defendant acted under "color of state law" is jurisdictional. *Lucas v. Riggi*, No. 07-CV-6200, 2008 WL 4758706, at *2 (W.D.N.Y. Oct. 29, 2008) (citing *Polk County v. Dodson*, 454 U.S. 312, 315 (1981)). Private conduct is simply beyond the reach of section 1983 "'no matter how discriminatory or wrongful" that conduct may be." *Id.* (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999)). A private party may act under color of state law if he or she engages in conduct that constitutes willful participation in joint activity with the state. *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (per curiam). The nexus to the state must be so close as to be fairly treated as that of the state itself. *Tancredi v. Metro Life Ins. Co.,* 316 F.3d 308, 312 (2d Cir. 2003) (citations omitted).

In this case, plaintiff is attempting to sue two individuals who are private parties and who are employed by a private California corporation that apparently provided care to plaintiff's daughter. There is no indication that the corporation is anything but a private entity, and the named individuals are private actors. Plaintiff has not alleged that the defendants engaged in any conduct, constituting willful participation in joint activity with the state of California. Thus, there is no jurisdiction under section 1983.[6]

---

[6] Although not in the body of the complaint, the civil cover sheet also mentions the "Federal Tort Claims Act" ("FTCA"), 28 U.S.C. §§ 1346 (b)(1), 2671 *et seq*. as a basis for jurisdiction. (Dkt. No. 1-1). Federal Tort Claims require exhaustion of administrative remedies. 42 U.S.C. § 1997e(a). Plaintiff has not alleged any Federal Tort Claim, and has not alleged that she has exhausted her administrative remedies. The only proper defendant in an FTCA action is the United States of America. *See Castro v. United States*, 34 F.3d 106, 110-111 (2d Cir. 1994); *Pierre v. Napolitano*, 958 F. Supp. 2d 461, 487 (S.D.N.Y. 2013). Thus, plaintiff cannot assert jurisdiction under this statute.

## 2. Diversity Jurisdiction

Diversity is present when an action is between citizens of different states. 28 U.S.C. § 1332 (a)(1). In addition to diversity of citizenship, however, section 1332 also requires that the amount in controversy to confer diversity jurisdiction on the federal court is $ 75,000.00, "exclusive of interest and costs". 28 U.S.C. § 1332(a). The party invoking diversity jurisdiction has the burden of showing that there is a "reasonable probability" that the claim is in excess of the jurisdictional amount. *Scherer v. Equitable Life Assur. Soc'y of the United States*, 347 F.3d 394, 397 (2d Cir. 2003) (quoting *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994)).

Generally, the "face of the complaint is a good faith representation of the actual amount in controversy, and a party opposing diversity jurisdiction must show to a legal certainty that the amount recoverable does not meet the jurisdictional amount." *Id.* at 397. (citations omitted). The Second Circuit has stated that even where the allegations "leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted." *Id.* (quoting inter alia *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982)) (internal quotation marks omitted).

In this case, plaintiff is suing defendants who reside in California. Plaintiff is now incarcerated in New York State, and it appears that prior to her incarceration, she was a resident of New York State. Plaintiff has labeled her complaint as one for "personal injury" and alleges injury to her daughter based on the actions of these defendants. Plaintiff is requesting thirty million dollars in damages. Thus, on the facts as stated in the complaint, plaintiff could bring a diversity action. However, the

analysis does not end at the jurisdictional stage in this case.

**IV. <u>Venue</u>**

    **A. Legal Standards**

Under 28 U.S.C. § 1391(b), a civil action may be brought in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). This venue statute is applicable to "all civil actions brought in district courts of the United States," "except as otherwise provided by law." *Id.* § 1391(a).

    **B. Application**

Neither of the defendants in this case reside in this district, none of the conduct that forms the basis of plaintiff's claims occurred in this district, and neither defendant appears to be subject to service in the Northern District of New York. Both of the defendants reside in Los Angeles County, California. Los Angeles County is in the Central District of California. 28 U.S.C. § 84(c)(2). The facts stated in plaintiff's complaint have absolutely no connection to this district,[7] and therefore, venue is

---

[7] Although plaintiff's residence is not relevant to the venue statute, the court notes that plaintiff is incarcerated in Bedford Hills Correctional Facility. Bedford Hills is located in Westchester County. Westchester County is located in the Southern District of New York. 28 U.S.C. § 112(b). Nothing about this action relates to the Northern District of New York.

8

improper under section 1391.

When a case is filed in a district in which venue is improper, the court shall dismiss the case "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). In this case, this court finds that such a transfer would not be in the interests of justice and will recommend dismissal with prejudice of plaintiff's complaint.

## V.  **Statute of Limitations**

### A.  **Legal Standards**

Even if this court transferred this action to the Central District of California as a "personal injury"[8] diversity case, the action would be subject to dismissal. The federal court in California would use the California statute of limitations and the state's tolling provisions in a diversity case such as this one which raises state law claims. *Vincent v. Money Store*, 915 F. Supp. 2d 553, 562 (S.D.N.Y. 2013). The statute of limitations in California for "personal injury" is two-years. *In re: Zyprexa Prods. Liab. Litig.,* Nos. 04-MD-1596, 09-CV-2782, 2009 WL 5062114, at *11-12 (E.D.N.Y. Dec. 10, 2009) (citing Cal. Civ. Proc. § 335.1 (2002) ("Within two years: An action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another.") Under California's "discovery rule," the two year statute of limitations for personal injury actions accrues when the plaintiff "'discovers or has reason to discover, the cause of action.'" *Belcher v. Eli Lilly & Co.*, 394 F. App'x 821, 822-23 (2d Cir. 2010) (quoting *Fox v. Endo Surgery, Inc.*, 35 Cal. 4th 797, 27 Cal. Rptr. 3d 661, 110

---

[8] Plaintiff has checked a box on the civil cover sheet of her complaint for "Other Personal Injury." (Dkt. No. 1-1).

P.3d 914, 919 (2005)).

To the extent that the case can be interpreted as suing a health care provider, for professional negligence, the California statute of limitations is three years from injury or one year from the date that plaintiff discovered or should have discovered the injury with due diligence. *Kitzig v. Nordquist*, 81 Cal. App. 4th 1384, 1390 (Cal. App. 4th Dist. 2000) (citing Cal. Civ. Proc. § 340.5). There is an exception for minors, stating that actions by a minor under the age of six years may be brought within three years or prior to the minor's eighth birthday, which ever is longer. *Id.* The exception would not apply in this action because plaintiff is not suing on behalf of V.G., and V.G. will never reach her eighth birthday because of her death. California law also provides for tolling when an individual is incarcerated "at the time that the cause of action accrued." Cal. Civ. Proc. § 352.1. However, the tolling is limited to two extra years, and the individual's sentence must be less than life. *Id.*

### B. Application

Plaintiff's claims could be interpreted as "personal injury," although the claims do not relate to her own alleged personal injuries. One of the problems in this complaint is that plaintiff never indicates when the defendants' actions allegedly occurred. With such an omission, normally, it would be impossible to determine if the statute of limitations had run. However, the court properly takes judicial notice that plaintiff is now incarcerated for the murder of V.G., her three-year-old handicapped child. *See People v. Griffin*, 48 A.D.3d 1233, 851 N.Y.S.2d 808 (4th Dep't 2008). Plaintiff has been incarcerated since 2006 for this crime. *Id.* Plaintiff has previously brought an action in this court with respect to the care that other individuals gave her

child.[9] *See Griffin v. Does*, No. 7:14-CV-504 (MAD/ATB).

Clearly, plaintiff's claims with respect to her daughter would have accrued no later than the date of V.G.'s death, which obviously occurred before plaintiff was convicted of the homicide. Plaintiff states that she found out that her daughter was not weaned off of her medications after plaintiff's arrest for her daughter's death, but apparently before her conviction. (Compl. at CM/ECF p.8). Plaintiff also alleges that defendants did not properly train plaintiff to take care of her daughter. (*Id.* at CM/ECF p.9). Plaintiff was certainly aware of her "lack of training" at the time that it happened. Even using the 2006 conviction date as the date of accrual, the statute of limitations has long since run. The California statutory tolling provision would not apply in plaintiff's case because she is serving a sentence of 22 years to life imprisonment, and the tolling provision specifically states that it does not apply to an inmate serving a life sentence. Additionally, she was not incarcerated at the time that her causes of action accrued, although she was convicted for murder shortly thereafter.

Equitable tolling is also available under California law as a "judicially created doctrine that operates to suspend or extend a statute of limitations in order to ensure that a limitations period is not used to bar a claim unfairly." *Vincent v. Money Store*, 915 F. Supp. 2d at 570 (quoting *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1185 (9th Cir. 2009)). There is also no indication that equitable tolling would apply in this case. Plaintiff's claim would not be barred unfairly if the California court declined to extend equitable tolling. As stated above, plaintiff was convicted of her child's homicide.

---

[9] The issues and the basis for jurisdiction in 7:14-CV-504 were different, but there is no changing the date that plaintiff was incarcerated for the death of V.G. This court's dismissal recommendation in that case is currently pending before the District Court.

11

Plaintiff's claims that individuals in a facility engaged in some allegedly negligent conduct, prior to 2006, causing some unspecified "risk" to plaintiff's child is not the type of factual basis that would cause a court to extend the statute of limitation based on equitable tolling. Plaintiff has had a great deal of time to consider her alleged claims. Thus, the statute of limitations provides another basis for dismissal.

## VI. Merits

### A. Legal Standards

Although the court need not undertake this analysis because of the alternative bases for dismissal rather than transfer, the court notes that under California law, the defendant's negligence must be "'the proximate cause of a *personal injury or wrongful death*.'" *Arroyo v. Plosay*, 225 Cal. App. 4th 279, 298, 170 Cal. Rptr. 3d 125, 141 (Ct. App. 2d Dist. 2014).

### B. Application

In this case, plaintiff claims that the defendants' conduct was the apparent reduction of V.G.'s medication, allegedly putting her "at risk." There is absolutely no claim that this failure to wean the child off of certain medications caused her any injury at all. It is the plaintiff's blatant assumption that this was a problem, and plaintiff's claim that this conduct was a "prelude to [V.G.'s] untimely death" is meritless. Plaintiff vague claim that the defendants failed to instruct plaintiff on how to care for her child also states no claim. Once again, plaintiff may be attempting to blame the death of her child upon the defendants' failure to teach plaintiff how to care for the child properly. Since plaintiff was convicted of murdering her child, this attempt to blame another for plaintiff's actions is completely meritless.

## CONCLUSION

This court finds that venue is improper in the Northern District of New York. The court also concludes that transfer of this action would not be in the interests of justice because the action would clearly be barred by the California statute of limitations and is completely frivolous.

**WHEREFORE,** based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED FOR PURPOSES OF FILING ONLY**, and it is

**RECOMMENDED**, that the plaintiff's complaint be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii), and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: August 25, 2014

*[signature]*
Hon. Andrew T. Baxter
U.S. Magistrate Judge